223915 Terpsehore Maras et al v. Mayfield City SD et al Argument not to exceed 15 minutes per side Mr. Mendenhall, you may proceed Thank you. May it please the court. I'm, excuse me, I'm Counsel for Tory Maras and I would like to reserve five minutes for rebuttal, your honors. This court asked us to address the issue of mootness in this case and I do want to do that and I think the main issue with mootness is that this is an issue that is clearly capable of repetition at this point and we have seen government just due to a pandemic really exceed its bounds at every level, local, state, and federal and this is ostensibly about masking but I would submit that it's also about something else. It's about a school district that is making a health decision for the children and that's not an appropriate role for the health. Would you admit that the mask mandate is now gone? The mask mandate is now gone, yes, your honor. So why didn't, I thought we rejected the capable of repetition in resurrection schools so that was our en banc decision. It was a different context, I'll admit, it was a religious liberty challenge but we still found the challenge moot because the state had withdrawn the mask mandate. That's correct, resurrection school, and that was focused on the mask mandate but I submit this is a little bit of a larger issue. School districts are not health providers, they should not be implementing That's the merits, but why, if they reimpose a mandate she now has counsel so she can sue tomorrow to challenge the mandate. What's the harm, if we find it moot, we could vacate the judgment below and if there's a new mandate that comes along, your client, I don't know that would be harmed in any way and she would actually be able to hopefully now sue if she had counsel. Of course she could sue, yes, but the problem is the school doesn't have the power to issue this type of mandate that it issued. It claims this idea that it can issue a health mandate for these children. That's not what the schools are here for. They're here for education, and they've exceeded the bounds of their power. They're here, they're mandated. You're still arguing, they haven't exceeded the bounds of their power today, right? Under your theory, they're not harming you. They were harming you, potentially, or your client's child, but I just don't see why this case isn't moot under a plain application of resurrection schools. First of all, your honor, with all due respect, I do think there are problems with the resurrection school case. It's an en banc decision, it's binding on us. I know, and I think that decision does need to be appealed because the defendants in these cases need to Would you agree it's binding then and you can preserve any It's binding and it does need to be preserved, but that's why I'm arguing this is a little bit more than just a mask mandate. It's the adoption of power that the school hasn't reneged on. It claims to have the power to make health decisions. They need to stop doing that, and they need to completely renege on that power and say it absolutely will not happen again. The burden of proof is on them to prove they won't take over these kind of health-related activity in the future. They haven't done that. The burden is not on my client. It's not on my plaintiff's side to prove that they'll do it again. It's on the other The case involves masking. I'm sorry? The case involves a masking mandate, right? Yes. I mean, would you be looking to this court to make a declaration that schools don't have any authority to make any decision that relates to health? To an extent, Your Honor, yes. Schools are not public health departments. They're not hospitals. In fact, in the state of Ohio, we are not required to go along with health systems. These schools are acting like health systems, which they are not. Do you think we're health? We should use our own medical judgment to trump the school's medical judgment? Do you think I have a lot of medical judgment? I went to law school because I can't do math. No, Your Honor. I don't think the school should be making that kind of medical judgment. The answer is they shouldn't be making the medical judgment. That's not who they are. They're here to educate our children. They're not here to make general policies about whether a mask works or doesn't work. And then I'd like to move on from that unless there's some other questions. The other issue is that my client had her own personal rights to enforce the care of her child in whatever that child was. So she has a personal right to raise that child. She has a personal right as well to participate in the process that that school laid out, to engage in the argument and the debate about what those policies are. This issue of whether a school acts like a health care system or not should have been debated. This issue about if they are a health care system. So are you saying she has her own claims and is raising her own claims or she has the right to raise the claims of her child? No, Your Honor. There's two things going on here. She did raise claims for her child, but she also raised her own claims. She raised due process claims. She raised parental role claims that she had a right to vindication. The judge in this case down below said she didn't raise any of those claims. If you look at the introductory paragraphs of the complaint, they're right there. I understand you raised a procedural due process claim about not being able to speak at the board meeting where they adopted the policy. But then like the next paragraph, it suggests that she was able to speak. So I guess I don't understand. Your Honor is mistaken. The policy was adopted unilaterally by the superintendent and not the board. That's part of the problem. That happened about a week before. Maybe I'm misremembering your complaint, but I thought your complaint said there was a board meeting at which they... I admit this is getting in the weeds, Your Honor, but at the board meeting, the board said they would review the mask policy every week. But the superintendent had previously implemented the policy without public input that's required by the board regulations. So they never got the public input. And then the board did, I guess, consider that policy, but never allowed Tori Marris a chance to address it, present her expert testimony that she had paid for, and challenge this health-related policy, which she claims, and I agree, is inappropriate. So that's the point. This policy was implemented without input from the community, without input from the parents. So my understanding, so your point now is that the board meeting itself was just pro forma, and it wasn't about her inability to speak at the board meeting. It was just that they violated procedures in enacting the policy. Two points. A, they violated the procedures because the superintendent enacted the policy about a week before of mandatory masking K-12. Then they set up a meeting where the board said it would review the policies. She attempted to address the board before they reviewed the policy and wasn't allowed to. She was finally allowed to have some input following the board reviewing the policy. But that was just merely kind of a ministerial action. It wasn't, you know. You say following the board reviewing the policy. Are you talking about the hearing at which they approved it? No. You're talking about after they, and not following your timeline. The way the policy was set up is the policy was implemented by the superintendent previously. And there was a statement in the communications that the board would review that policy on a weekly basis. I imagine they were looking at things like, you know, incidents of COVID in the community, what was happening in the school, things like that. You know, so they could have input, I imagine, in terms of whether that policy should continue. But the board didn't implement that policy in the first place. From my understanding, it was the superintendent who implemented it without public input. But when was she heard? She was heard after the board had its discussion reviewing the superintendent's policy, which had previously been put into place. Okay, but she was heard in what context? Was this an open review? It was outside of the context of the board review of the superintendent's policy. It seems to have been something that was ad hoc at the end of the meeting. At the end of the meeting? At the end of the board meeting on the 25th. Okay, and that occurred after the board approved it, but this is what I'm trying to find out. The board, listen, the superintendent implemented the policy. I understand that, but then the board at some point had a period, had a discussion, this is what they called it, a discussion of the superintendent's policy. And then they left it in place and said they would review it weekly. And at the end of that meeting that they left it in place, she did have a chance to address the board.  So when were her procedural due process rights violated? That's a very good question. I think the procedural due process was violated when the superintendent implemented a health policy without taking input from the public. Okay. And that included Tory Maris. Okay. Can I ask you real quick before you sit down, just switching gears to whether your client has the right to represent her child per se. What would you do with our precedent on that? Because our precedent seems to be quite unequivocal that parents can't represent their children per se. Yeah, I mean we have been in a very different situation. You know, policies have been coming down right and left in school districts and otherwise. And I can just tell you it's very hard for parents to find attorneys in these instances. We have been in a very unique situation. But when constitutional rights are on the issue, I literally am asking for this court to change the rules. When constitutional rights are at issue for the children in terms of how they're being treated, I think parents should be able to come into the court. I understand your precedent. So those precedents are binding. We have to either distinguish them or the en banc court can overrule them. Is there any arguments you would make to the panel to say that they are distinguishable? Or are you just preserving this argument for the en banc court? Right now I'm preserving that argument. We do have a brief description of a proposed test in the filing, though. Thank you. Thank you. Thank you, counsel.  May it please the court, my name is Thomas Fair, and I represent the appellees, the Mayfield City School District and Board of Education, Dr. Michael Barnes, Ron Fornaro, Sue Grozek, Al Hess, George Hughes, and Jimmy Teresi. I'd like to start by apologizing to this panel for our failure to address the issue of mootness before today. Until this court's order on Friday directing us to address the mootness issue, we were unaware of the en banc decision in Resurrection School. And we were also unaware until we checked, in response to your order, that Ms. Maris' daughter actually graduated the Mayfield schools last summer and will not be, as far as we know, in attendance at the school again. So we do believe that the resurrection decision makes clear that the appellant's challenge here is moot. But this is especially so now because even if there was a reason to question resurrection's application, Ms. Maris' daughter will not be in attendance at school, and so it is not capable of repetition, at least as to this family. What the authority to the authority to issue the mask mandate or the power to do it, there doesn't seem to be any restriction or criteria like how many COVID cases are there or vaccination rates or anything like that. It seems very broad to me. Doesn't that suggest that it is capable of repetition? I mean, I don't know whether there were standards involved in Resurrection School, but it's kind of standardless, isn't it? So we don't know. I mean, one of the things that we talked about in Resurrection School is, you know, the medical landscape is changing. But if it's not tied to the medical landscape, then why wouldn't it be capable of repetition? It certainly is tied to the medical landscape, I think, Your Honor. The background and all the authority as was recited by the trial court specified that this all came out of orders from the Ohio Governor and the Board of Health, recommendations of the CDC, the Cleveland Clinic. This, you know, Mr. Mendenhall discussed the fact that- I understand that they may look to those sources for guidance. But I mean, is there an actual document or statement? I mean, the policy manual seems to not have anything specific in it. I'm not aware, as I sit here, whether there's specifics as to every policy that the board might order or might issue. I do believe that there is, and that also is not something that was raised below. We were, the complaint below and what we addressed below and what the district court dealt with below was a specific complaint that this policy was inappropriate. Yeah, I know, I understand that. But it wasn't raised below at all. So we're in the realm of not really talking about things raised below. Let me ask you this. One of the things in resurrection was the idea that any masking policy later would be different than the masking policy that was in place at the time this case came up. And I'm curious, in this case, it appears to me based on the authority and some other things that it probably would be a similar masking requirement if it were ever necessary again. Is that right? I think that what resurrection said that I would agree with is that because of the advent of the vaccines, it is unlikely that it would be the same. And there is certainly nothing in the record here to suggest that either the Mayfield district or anybody else has an intention to implement a similar policy. What is the status of how you're monitoring COVID cases now? Is there any monitoring going on or any possibility that if it reaches above a certain level in terms of outbreaks in the area that you might, is there any guidance with respect to this? Or is it just... My understanding, and this is outdated, Your Honor, is that at the time they were monitoring the Cuyahoga County, kept track of cases in the hospitals, and that when it reached certain levels, that would be triggered something in the State Department of Health and that they would take direction from the State Department of Health. I think that, therefore, the appellant's position is that at this point the appeal is moot. We would stand ready to supplement the record as necessary on both the point of the current withdrawal of the mask mandate as well as the graduation of Ms. Maris' daughter. And to the extent the court would like us to file a motion, we would do so. But we will follow your direction on how you want the record to be supported on that. Yeah, I do think, and maybe we'll talk afterwards, but I do think it would be appropriate to file if we're relying on factual allegations that you present that information. Very well. Your Honor, I would like to also briefly address, if I could, the individual claims. I would say that the description that I heard from Mr. Mendenhall of what went on in the Board of Education is something that doesn't match what is alleged in the complaint. The complaint is very specific as to the policies that were out there that were supposedly not complied with. None of this was discussed. I think as Judge White pointed out, it's very clear that Ms. Maris did have full opportunity to speak. There are several decisions by this court affirming that providing a limited amount of speech regarding school board policies is sufficient, that there is not an unbridled opportunity to speak, especially within the confines of a school board building. Was that permitted after the decision had been made? Is it permitted? Is she correct that when she was eventually permitted to speak, it was at the end of the meeting and decisions had already been made? No, I don't believe that is correct, Your Honor. I think that what happened was that there was discussion for anybody who wanted to speak at the end of the meeting. She and other members of the community did speak at that time. The recommendation had been made by the superintendent, but following that meeting, the school board adopted it. So I think your friend on the other side suggested that the superintendent did not make a recommendation and that the superintendent imposed an edict. I do not believe that to be the case and certainly not what is reflected in the pleadings. Switching gears to whether parents have a right to represent their children pro se, I do find it somewhat concerning that do children just not have pro se rights? That seems to be the implication of if there is a categorical rule that parents can never represent children, it seems to me that that suggests children just simply do not have pro se rights because they can't represent themselves and their parents can't represent them, so they can only litigate through counsel. I guess that's somewhat concerning to me. I do think that the jurisprudence in this circuit makes clear that there are certain situations where it is permitted and certain where they are not. I think the existing decisions certainly say that 1983 cases cannot be brought by pro se parents and there are opportunities for parents to obtain counsel on these kinds of issues. They have done so in the past. Many of the mass cases around the country have been brought by counsel, so it is certainly not a situation where they are unable to get counsel. Isn't that, I suppose, it seems to me it's prioritizing wealthy parents in some respects. Why should parents have the right to forego or eliminate their children's claims or litigate their children's claims if they have the means to retain counsel but indigent parents simply don't have the same right? That seems somewhat troubling to me. Especially, I mean, you could say, well, the child could wait until the age of majority, but if it's an emergency situation like the facts of this one where they're seeking an injunction, I don't think that is feasible. And then I suppose your response was, well, everybody can get counsel, but I mean obviously she didn't entail appeal, so I guess this is the case that proves that that's not true. I think just the opposite, Your Honor. I think the fact that she did get counsel proves that she could have gotten counsel. I don't know that she ever tried. Certainly the record doesn't suggest that she tried. And we know that there are many, many ways that people get counsel, whether it's through finding attorneys that are willing to work for the awards under the statutes. We know that Congress implemented Section 1984 just for that purpose. We know that there are many organizations that provide representation to people who don't have the means to pay for counsel, especially when it comes to the vindication of what they claim are individual rights. So it's not that they're not able to find counsel. They may not always be able to find counsel, but there's no guarantee of that right under the jurisprudence that I know of. But it just puts you in a bind. Like, I don't understand where it comes from. I mean, under 1654, everybody has a right to represent themselves, basically, right? There's no age requirement in 1654. And I assume under Ohio law, maybe I'm wrong, but I assume there are some statutes that talk about parental rights, or, I mean, I suppose you have constitutional arguments, but most states have statutory schemes that talk about parents asserting the rights of their children or whatever. Why wouldn't the combination of those two make it so that this situation could happen? Your Honor, I think that in this case, part of the problem is that the claim was not good enough for somebody to bring it. I don't know that there's a... I mean, even today, if you think you have a valid claim and then lawyers don't, you still have the option to proceed yourself. And your counterargument there is essentially, well, her claim is frivolous, but, I mean, she obviously doesn't think so. And just because she can't find a lawyer, I don't think it seems strange to say that lawyers stand between a child and a right to a courtroom. Well, Your Honor, in this case, I think that the district court certainly found that there was no basis to the claims. I don't think there's anything that we've seen in the briefing here that suggests that the district court was wrong. So at least as to this case, there wasn't a problem that somebody had a valid claim that couldn't be vindicated. But if you go by that rationale, then you're basically deciding it without her voice, because no one's representing her. I don't know that that's different than any other case, Your Honor. And the fact that this is within the context of a 1983 case is no different than any other claim that any minor might have. Thank you. No further questions. We thank you for your time. Thank you very much. Can you start by... Do you admit the child is no longer in... Yes, she's no longer in school. She has graduated. But the effort has taken two years. One of the issues is when you bring these claims and you engage in these fights, my view of this is you deserve the right to be vindicated. And it's not just for Ms. Maris. It's for the other parents that are also concerned about the overstepping of the bounds of this school district. And we need to provide a salutary response to these institutions exceeding their bounds of their power. And that's what's happened here. I did look in the complaint, and the way that it's phrased is on paragraph 38, it looks to me like the superintendent made the mandate. And there's another page, it's page 37, and we cite to August 4th, 2021. He had a recommendation at that time. And then on paragraph 38, then he institutes a mandate. And you can see how then there is a statement that they'll have a review at the board meeting. But the mandate was instituted in my belief and by what I know and by what the complaint claims is by the superintendent. So she wanted to have input before anything like that would have been instituted in part to point out that A, you don't have the power to do this, and B, even if you did have the power to do this, it's completely ineffective. That's the evidence that she brought to the court. And C, she's the mom. And you can't... Are you saying that a school superintendent cannot take any action unless there's a public hearing before he or she does it? Yeah, that's correct, Your Honor. The way they set up their system is that when they had policy changes that parents and even the public, you didn't have to be just a parent, had a right to come and address the school district. So that's an issue, I guess, in terms of the mootness about her child leaving the school. Her rights are still at issue as a citizen of the community and she still has a right to have those addressed by the district court. Where do we find this? I'm sorry? Where do we find this? Oh, it's in the board documents. They set up a process in the board documents. Which section? I'm trying to get there, Your Honor. It is listed in the complaint and I would start on... It's page 8 of our complaint. So it must carry out its functions openly while seeking the involvement and contributions of the public, students, and staff in its decision-making process. Is this the amended complaint? This is the amended complaint. Not the one that's attached to her final effort to amend, but it is the active amended complaint that the judge ruled on. And I'm talking about page 8. Do you have a page ID number by any chance? I do. It is page ID number 493. And that's where it starts. The discussion of the relevant policies of the Board of Education starts at page ID 493. I'm moving on to page ID 495. Board policies and operations may originate from students, community residents, employees, board members, or civic groups. And it's supposed to have a careful and orderly process when examining these policy proposals before board action. That's what they didn't have. This superintendent just issued policies saying, I'm going to rely on the World Health Organization. I'm not sure that we were even a member of the World Health Organization at that time. And then he says, oh, I'm going to rely on the state of Ohio. Well, there are numerous challenges at the time to what the state of Ohio was doing because it was also outside the bounds of its power at the time. And then, oh, we're going to rely on the Cleveland Clinic. Well, okay, it's the Cleveland Clinic. Then we're talking about expertise. And my client brought expertise to the school. She had an expert report about the effectiveness of masking and about other mitigation processes. And if they are relying on the Cleveland Clinic, Cleveland Clinic just reinstituted a mask policy on its own campus for the hospital campus. So anyway, if there is nothing further, thank you very much for hearing me out this afternoon. Thank you, counsel. The case will be submitted.